■ Joy P. Stewart, Appellant, v Bruce Stewart, Respondent. [698 NYS2d 354] —Peters, J. Appeal from that part of an order of the Supreme Court (Kramer, J.), entered May 7, 1998 in Schenectady County, which partially denied plaintiff's motion for, *inter alia,* unpaid permanent maintenance and child support.

Plaintiff and defendant were married on July 21, 1956 and had three children, all of whom were over the age of 21 at the time of this action. On March 14, 1969, they entered into a

---

written separation agreement which provided that defendant, an orthopedic surgeon, agreed to pay, *inter alia*, 30% of the net income earned from his medical practice for child support and maintenance. The term "medical practice" was defined in the agreement but "net income" was not.

In accordance with such agreement, defendant timely provided his yearly income tax returns and the calculations supporting his derivation of 30% of his net income for the preceding year. From 1972 through 1977, such calculations reflected deductions for his contribution to a Keogh Plan and the payment of practice-related insurance and self-employment expenses.[1]

In 1976, when his employer incorporated as a professional corporation, all 22 employees, including defendant, became a participant in a defined benefit plan and defined contribution plan. Through 1992, the professional corporation made contributions on his behalf to these plans and, therefore, no retirement contributions were deducted from his income prior to computing plaintiff's support for the preceding year.[2] Despite plaintiff's contentions that on or about 1978 significantly large amounts of money were deducted from his medical income for deposit into the retirement account, defendant maintains that as one of several shareholders and an officer of the professional corporation, he did not have any authority to independently control these investments. At no time from the inception of the agreement had plaintiff challenged defendant's calculation of support.

In May 1994, defendant made his last payment of permanent maintenance predicated upon his retirement from the practice of medicine. The final income tax return noted a pension in the amount of $1,547,019.[3] In August 1995, plaintiff's counsel sought information pertaining to pension contributions, contending that such contributions may be deemed to constitute deferred income from the medical practice which would be subject to the maintenance provisions of the agreement. In a letter dated August 30, 1995, defendant's counsel denied the request, detailed his contrary interpretation of the

---

**1.** Defendant's worksheet for 1977 does not reflect a deduction for practice insurance during 1976.

**2.** These plans continued until approximately 1992 when the professional corporation, for accounting and tax reasons, discontinued these plans and commenced a 401 (k) plan. The method of investing, however, remained the same.

**3.** It is contended that this is the only return which was prepared by an accountant.

agreement and informed plaintiff that upon his review of defendant's yearly calculations, he believed that defendant had been mistakenly overpaying his share of maintenance and support by failing to deduct State or Federal income taxes prior to his calculations.

Approximately 3½ years later, by order to show cause dated January 30, 1998, plaintiff sought, *inter alia*, arrearages of permanent support and maintenance. Defendant cross-moved for an order directing reimbursement for all overpayments he had made in connection therewith. After a hearing, Supreme Court found, *inter alia*, that the separation agreement specifically provided that investments and income-producing assets were not to be considered as "net income" and that defendant's retirement should have been anticipated. It further found that with respect to the amounts included in defendant's calculations, plaintiff had acquiesced in his interpretation thereof for the last 30 years and therefore ratified it. Concluding that she was not entitled to any share of his pension and that defendant's cross motion would be denied, it entered the order from which plaintiff appeals.

We affirm. It is well settled that when the terms and the provisions of a separation agreement are incorporated, but not merged, into a final judgment of divorce, such agreement remains a separate and independent contract between the parties subject to the principles of contract interpretation (*see, Merl v Merl*, 67 NY2d 359, 362; *Matter of Kurzon v Kurzon*, 246 AD2d 693; *Hewlett v Hewlett*, 243 AD2d 964, *lv dismissed* 91 NY2d 887). Having failed to contend that the agreement was not fair or equitable when executed or that an unforeseen change in circumstances had occurred (*see, Hewlett v Hewlett, supra*, at 966), we are left to interpret the terms and provisions thereof to assess the intent of the parties. In so doing, "the court's inquiry should not be limited to the literal language of the agreement, but should also include a consideration of whatever may be reasonably implied from that literal language" (*id.*, at 966).

Discerning no need to resort to extrinsic evidence (*see, Matter of Kurzon v Kurzon, supra*), we find it clear that maintenance was to cease upon defendant's retirement from the practice of medicine provided that he derived no further income in his capacity as a physician either from active practice, research, teaching or any other work performed by him "in his vocation as a physician". As the terms of the agreement provide that "[s]aid income specifically excludes any interest or investment income that [defendant] should earn or receive", we agree

with Supreme Court that plaintiff was not entitled to maintenance after defendant's retirement from the practice of medicine.

Turning to the belated challenge to defendant's calculation of "net income", we find that in the absence of a definition of such term in the agreement coupled with plaintiff's acquiescence to defendant's faithful performance and consistent interpretation thereof without challenge for approximately 30 years, with an acceptance of benefits therefrom (*see, Beutel v Beutel*, 55 NY2d 957; *Lavelle v Lavelle*, 187 AD2d 912), the agreement was ratified, thereby precluding our intervention. Lacking record evidence of any deceitful or fraudulent conduct by defendant, we affirm Supreme Court's order in its entirety.

Mercure, J. P., Crew III, Carpinello and Graffeo, JJ., concur. Ordered that the order is affirmed, without costs.